Good morning. Good morning. Good to be here too. Richard Roman caring for Mr. Yao. This is a case where the defendant was indicted for illegal entry into the United States after he had previously been removed and deported. He went to a jury trial. He was found guilty. In time he appealed and ultimately in his appeal he raised a couple of issues. The first one which is really the primary argument relating to the defense of necessity. Prior to trial the government moved to exclude the defense of necessity that the defendant wanted to raise. His defense was based on the following. He was in China. He was a Chinese individual. He had two children. And after his second child he was sterilized pursuant to the government policy. Thereafter he had twins. Because of this breach and that situation of having children he feared prosecution and fled China. He was afraid that if he stayed he was going to be persecuted. He was afraid of jail. He was in hiding. He went to Saipan. I guess that's the question. Why couldn't he stay in Saipan? Well, I think that he was afraid that if he stayed in Saipan he might ultimately end up going back. It was really linked in with him being persecuted in China. So he was flinged to where he was. He was convicted of entering Guam. That's correct. In this case, yes, he had previous deportation. He was convicted of entering Guam. The government of Saipan never did prosecute him for having twins in China, did they? They did not. And he wasn't subject to proceedings to deport him when he was in Saipan? At that time he was not. Frankly, there was no evidence that Saipan didn't have its own asylum program. There was as part of the offer of proof. Let me just state one thing. The issue is not whether this was a necessity. The question is whether he made a sufficient offer of proof to present this to the jury at his trial. Well, I understand that. So the judge has to make some considerations based on what's in front of him in the offer of proof. And my good colleague has already hit a very important point, and that is we're really talking about him being in Saipan. And while he's in Saipan, nobody prosecutes him. Nobody seeks to deport him. The only thing that we have here is whether there's an office for asylum. I mean, one may question that, but the bottom line is he didn't ask for any mailing forms. There's really no evidence in the record that Saipan doesn't have their own asylum program. And the alternative is that he didn't come to Guam at all for that problem, but because there was no work in Saipan. And if we go to that, you lose. So we've got to get you something better. Well, according – there was – the lawyer did make an offer of proof that there was no political asylum in Saipan. And so the question then is that what you just indicated, did he try to do something else while he was in Saipan to seek the permission that he was required to under the statute to re-enter? And the offer of proof was that he made a certain effort to try to find a place to apply. And he said that there were no places available to do the application. Well, that would make sense if somebody were after him in Saipan so that he would have to ask for asylum. But nobody was, so I guess – Well, we're really talking about, as my colleague has suggested, the Arellano Rivera test. And the last one is there are no legal alternatives. And we can't find any way why there is no legal alternative. He had everything in Saipan. He did nothing to try to do anything about it. So he had a legal alternative to stay there. Right. His legal alternative, other than staying there, he wanted to do an application to come into Guam. According to his offer of proof, he was unable to find a place to apply. And he said there were no places to apply. Well, and then the second part is, the second part of the standard of review is number two, where he acted to prevent eminent harm, and there is no eminent harm in Saipan. That's true, but the eminent harm is if he ends up going back to China. Well, what does eminent mean to you? Well, eminent is – I guess that's a very relative term. Here, what he testified to is that in China, he was in hiding, and that he had the threat of jail, and that he was on the run. So if he then goes – So how is eminent used in our case, though? Oh, I think it requires some kind of – I don't know if I've seen it exactly in the context of these cases, but it's something that's fairly immediate. For that gentleman, I think it's fairly immediate if he was on the lam out of China, using Saipan, so to speak, as a stopover point, and then ends up here. Well, had they tracked him – had China tracked him to Saipan? There was nothing in their offer of proof for the record that they had tracked him to Saipan. But I think that he would – again, to raise the defense, it's strictly – if you raise the four elements, as Judge Smith indicated, in the Mariana case, if you meet the threshold of indicating some evidence on each point, then it should go forward to the jury. So some of these issues, like you just raised, is he in imminent harm? I think those are tribal issues of fact. It's what is imminent to him is obviously not imminent to me or you if we're not on the run. So – and in China, also in the legal alternative, I mean, it's really what I've said before. So – I think we understand your position. Yeah. On the second issue, I – because I think the first one is really the primary issue, I'd like to reserve the little under three minutes that I have on the rebuttal, unless there's anything on the issue of the validity of the expert fingerprint testimony. There don't appear to be any questions. You may reserve. Thank you. You may reserve the remainder if you'd like. Yeah, I understand. Thank you. Good morning. Good morning. Good morning. My name is Eric O'Malley. I'm here on behalf of the Affiliate of the United States of America. In this case, the defendant is trying to inject what is essentially an asylum claim into his criminal case in the guise of excessive defense. This is both legally impenetrable, and I would submit also as a policy matter, wise. We are looking at the four-pronged parole test, that is, whether there was less than two evils, whether the defendant showed there was imminent harm, whether or not there was a reasonable nexus between the actions that he took and the harm that he was seeking to avoid, and fourth, whether or not there were any legal alternatives. I'd like to begin with the fourth prong. The trial court did decide, I believe correctly, that under U.S. Attorney Ariana Rivera, because he did not make any attempt to appeal to the Attorney General for reentry, that that alone is sufficient to show that there was a legal alternative, but he did not avail himself of it. As pointed out in the brief, he could have also mailed an asylum claim in from Saipan, and as he acknowledged during the proper session, there are post offices on Saipan. He could have also traveled to a different country, a different jurisdiction from which he had not been deported. That would have been a legal alternative as to asylum going to Guam. Finally, he could have filed a CMI asylum claim. Had he done a little bit more than just ask around about an asylum office in Saipan, he would have learned that there is, in fact, an asylum available in Saipan. Moving on to the second prong. This is the imminent harm. How is that in this record? Your Honor, I don't think it was an affirmative showing. During the record, during the proper session, there was basically an attempt to prove the negative, that there was none. But in my view, I can see that that's a little bit difficult to do to prove that there wasn't. But I think that the trial judge was certainly within her discretion to submit that he failed to prove the negative. But you didn't prove the positive. You made no proffer that there was a positive. There was no proffer of a positive. Moving on to the imminent harm. As there was in the record evidence of what he had done, however correct. I'm sorry. There was in the record evidence of what the petitioner had done about that particular problem. There was an offer of proof by his counsel, but there was also evidence in the record about what he had done personally, correct? There was, Your Honor. Which was inquire of his friends and neighbors. Basically. There was no attempt to contact any government authority, whether federal or local, to ask that whether or not an asylum was available. Moving on to the imminent harm, again, as Your Honor pointed out, there was something imminent about this. There was no standing order of deportation against him. There was no warrant for his arrest. As far as we know from the record, he was in Saipan illegally. He had status there. In any case, even worthy to be after him, the harm was still several steps removed. From what he would suffer in China. He still would have had to go through deportation proceedings. He could have filed a U.S. asylum claim. The CMI is subject to the same treaties that the United States and Soviet do. And even after he was returned to China, one would assume that he would at least have some semblance of process there. On the first prong, the lesser of two evils. By the defendant's own words, it was not a choice between the lesser of two evils, but the greater of two opportunities. His motivation for going to Guam was purely economic. Finally, the second prong, the reasonable nexus. It was meant that by the defendant's own description, he would have suffered something extraordinarily, quote-unquote, extraordinarily terrible in China, where he could return. However, a reasonable person, I would submit, instead of facing the risk of being returned to China and facing something extraordinarily terrible, a reasonable person would have just stayed low in Saipan and not taken the risk of going to Guam. So there is no reasonable nexus. Unless the government or the court has any questions regarding the fingerprint analysis, they are prepared to rely on our brief. Otherwise, I would submit that the defendants' issues that he has raised on this appeal are without error and that the trial court's decision should stand. Okay, well, do you agree with him? I wasn't quite sure I understood. Would you agree with him that the harm, the imminent harm, is to be measured by what might happen to him in China? I would disagree with that. I think the term imminent, if you were to expand it to be that broad, would pretty much swallow the rule. Well, what is the test? Where does the harm have to be imminent? I would submit that the harm, at the very least in this case, would have to be that there was an order of deportation against him in Saipan, a warrant for his arrest, and showing that he would have been unable to avail himself of any asylum. So I'm showing that he's about to be sent back to China. Yes. I think, at the very least, that is what is required. Thank you. Are there any other questions? No. Thank you. Just a couple of points in response to what the government said and in response to the inquiry about the offer of proof with respect to political asylum. In the excerpts of the record, Volume 1 on page 14, there was that issue specifically addressed to the defense counsel. I'll read it. It's two sentences. Is it true that Saipan has no political asylum? And the attorney answers, yes. So that was the only issue that came up. I mean, that was the offer of proof with respect to that issue. Well, my worry is this. The defense counsel on day one says, the problem is that he was fined by the Chinese government, he was sterilized after the second child, then he had twins, and he didn't have any time to apply to the AG because the government was looking for him. And on the second day, the defense counsel changes.  Because he did not think Saipan would grant it. And the people told him they knew of no place to apply. Now, that's a different story than what he's making as he makes his representation. I think it's both. I mean, I think he was afraid and on the run in China and afraid if he did get caught in Saipan that he would be deported and ultimately suffer the consequence of what he feared was obviously something pretty draconian. So I think you have to look at it from both points of where he came from. With respect to that he could have mailed in an application if he tried and thought that there wasn't a place for him to get one or was unable to locate it, obviously he couldn't mail it. So I think it's more than just having a $0.42 stamp. As we look at the elements of the defense, I thought my colleague's question was pretty good. The first element is he faced with a choice of evils and chose the lesser evil. Second is he acted to prevent imminent harm. Now it doesn't seem to me that those elements suggest that he's acting to prevent imminent harm which is not upon him at the time he makes the choice. And that's the problem that you have with this particular matter. When he makes the choice, he's not in China. He's making it in Saipan. And there is no imminent harm in Saipan. Well, I think the trial judge really never, he apparently found that there was imminent harm. His ruling was based on the fourth. She. She, I'm sorry. She based that decision, apparently found that the first three problems were there. And pretty much in making that decision decided on the fourth problem and there was no legal alternative. And because I have a standard review I can make a different choice. Well, that's right. I think that the court, this court should also take a look at what the trial court was doing in looking at the defendant in the eye when making the decision, although implied that there was some kind of imminent harm here. Okay. You have used your time. You are. I appreciate all of your time and it was a pleasure to be here. Thank you. Thank you. Thank you. We appreciate the arguments. The next case in Viral Watch v. Fulcino is submitted on the briefs and it is so ordered. We will hear the next case for argument.
judges: Schroeder, Paez, Smith